UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| **GORILLA TAX SERVICES, INC.,** ) <br> **SARKAUSKAS EMPIRE, INC., and** ) <br> **SARKAUSKAS ENTERPRISES, LLC,** ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **JTH TAX, LLC,** ) <br> Defendant. ) <br> ) | Case No.: 2:21cv136 |

**Serve:**

    JTH Tax, LLC d/b/a Liberty Tax Service
    Attn: C T Corporation System, Registered Agent
    4701 Cox Road, Ste. 285
    Glen Allen, Virginia 23060

## COMPLAINT

COME NOW the Plaintiffs, Gorilla Tax Services, Inc. ("Gorilla"), Sarkauskas Empire, Inc. ("Empire"), and Sarkauskas Enterprises, LLC ("Enterprises") (collectively, the "Plaintiffs"), by counsel, for their Complaint against the Defendant, JTH Tax, LLC d/b/a Liberty Tax Service ("Liberty Tax"), and hereby state as follows:

### The Parties

1.  Gorilla is a Wisconsin limited liability company and Area Developer ("AD") for Liberty Tax, as described more fully below. Gorilla has one member: Brad Sarkauskas, of Rhinelander, Wisconsin.

2.  Empire is a Wisconsin limited liability company and AD for Liberty Tax, as described more fully below. Empire has three members with the following residential addresses: Brad Sarkauskas, of Rhinelander, Wisconsin; Stanley E. Sarkauskas of Huntington Beach, California; and Rebecca Sarkauskas of Rhinelander, Wisconsin.

1

3.     Enterprises is a Wisconsin limited liability company and AD for Liberty Tax, as described more fully below. Gorilla has one member: Brad Sarkauskas, of Rhinelander, Wisconsin.

4.     Liberty Tax is a Delaware limited liability company with its headquarters and principal place of business located at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454. Liberty Tax is formally known as JTH Tax, Inc. d/b/a Liberty Tax Service.

## Subject Matter Jurisdiction

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

## Personal Jurisdiction

6.     Personal jurisdiction over Liberty Tax exists in Virginia because, among other reasons, Liberty Tax is a Virginia company and conducts business there.

## Venue

7.     Venue is proper in this Court because, among other reasons, it is a permissible venue under 28 U.S.C. § 1391 as a district in which Liberty Tax is subject to personal jurisdiction.

## Facts

**The Agreements**

8.     In order to accelerate the growth of its franchise system, Liberty Tax undertook some years ago to use ADs to expand its network.

9.     ADs purchase exclusive territories from Liberty Tax and, within that territory, recruit individual unit franchisees. The ADs then support and service the individual franchisees in exchange for a portion of the fees and royalties that unit franchisees pay to Liberty Tax.

10.    During 2006-2009, Plaintiffs entered into seven area development agreements

(individually, "Agreement" and collectively, "Agreements") with Liberty Tax that in general authorized each respective plaintiff to recruit, help develop, and support individual Liberty Tax unit franchisees within specified geographic areas. The agreements are attached as **Exhibits 1-7**.

11.    Each of the seven Agreements between Liberty Tax and a plaintiff contained the following provisions:

- a) It provided the respective plaintiff a defined geographic area divided into specific territories. (Schedule A of Exhibits 1-7)
- b) It required the plaintiff to pay Liberty Tax an initial franchise fee. (§ 3.1 of Exhibits 1-7)
- c) It authorized the plaintiff to use Liberty Tax tradenames, trademarks, and other commercial symbols. (§ 9.2 of Exhibits 1-7)
- d) It entitled the plaintiff to recruit unit franchisees for each of the territories who, if approved by Liberty Tax, paid Liberty Tax an initial franchise fee and agreed to pay 14 percent of their gross sales as royalties. (§§ 1.1, 3.3 of Exhibits 1-7)
- e) It made the plaintiff responsible for assisting unit franchisees in finding appropriate locations, coaching them on the Liberty Tax system, and providing on-going support. (§1.2 of Exhibits 1-7)
- f) It required the plaintiff to ensure the individual franchisees within its area complied with their franchise agreement financial performance reporting requirements. (§1.2(e) of Exhibits 1-7)
- g) It required the plaintiff to ensure that franchisees provided good customer service. (§1.2(e) of Exhibits 1-7)
- h) It required Liberty Tax to pay the respective plaintiff 50 percent of the initial fee paid by unit franchisees and 50 percent of the royalties unit franchisees paid under their franchise agreements with Liberty, plus certain additional payments. (§§ 3.2-3.3 of Exhibits 1-7)

12.    The specific Agreements entered into between Liberty Tax and plaintiffs are as follows:

- a) A July 25, 2006 Agreement between Liberty Tax and Gorilla providing Gorilla the exclusive right, subject to certain limitations, to develop 49 individual territories located in the Madison-Wausau-Rhinelander, Wisconsin area. Gorilla paid Liberty Tax a $652,872 franchise fee for those rights. (Exhibit 1)
- b) An October 29, 2007 Agreement between Liberty Tax and Gorilla providing Gorilla the exclusive right, subject to certain limitations, to develop 32 individual territories located in the South Bend-Elkhart, Indiana area. Gorilla paid Liberty Tax a $345,000 franchise fee for those rights. (Exhibit 2)

c) A June 7, 2007 Agreement between Empire and Liberty Tax provided Empire the exclusive right, subject to certain limitations, to develop 62 individual territories located in the Peoria-Bloomingdale, Champaign & Springfield, Illinois area. Empire paid Liberty Tax a $630,000 franchise fee for those rights. (Exhibit 3)

d) An October 29, 2007 Agreement between Empire and Liberty Tax providing Empire the exclusive right, subject to certain limitations, to develop 12 individual territories located in the Green Bay–Appleton, Wisconsin area. Empire paid Liberty Tax a $80,000 franchise fee for those rights. (Exhibit 4)

e) A December 29, 2006 Agreement between Enterprises and Liberty Tax providing Enterprises the exclusive right, subject to certain limitations, to develop 28 individual territories located in the Davenport-Rock Island-Moline, Illinois area. Gorilla paid Liberty Tax a $309,000 franchise fee for those rights. (Exhibit 5)

f) An April 8, 2009 Agreement between Enterprises and Liberty Tax providing Enterprises the exclusive right, subject to certain limitations, to develop 4 individual territories located in the Marquette, Michigan area. Enterprises paid Liberty Tax a $31,000 franchise fee for those rights. (Exhibit 6)

g) An October 29, 2007 Agreement between Enterprises and Liberty Tax providing Enterprises the exclusive right, subject to certain limitations, to develop 17 individual territories located in the Columbia-Jefferson City, Missouri area. Enterprises paid Liberty Tax a $170,000 franchise fee for those rights. (Exhibit 7)

**Attempts to Renew the Agreements**

13. The following were well-known general corporate policies and practices at Liberty Tax, as set forth by Liberty Tax leadership: (1) strict 180-day renewal notices for area development territories were not generally enforced when entities and agreements were in good standing, and (2) though written notice to renew was required by Liberty Tax's agreements, oral notice of territory renewals were generally accepted by Liberty Tax.

14. Over the years, the Plaintiffs had consistently been successful ADs for Liberty Tax and had developed strong reputations and considerable good will with their unit franchisees, other ADs, and Liberty Tax itself.

15. Thus, on several occasions prior to the expiration dates for Plaintiffs' Agreements, Plaintiffs made known to Liberty Tax their intent to renew all of them.

16. Each Agreement, at Section 8.2, provides that upon 180 days' notice, the AD could renew "this Agreement."

17. The parties intended that all seven of the Agreements be renewed the original terms in order to preserve Plaintiffs' substantial investment of money, time, and effort in developing the territories provided under the Agreements and to further Liberty Tax's objective of developing unit franchises through ADs.

18. On March 7, 2007, the president of each of the Plaintiffs, Brad Sarkauskas ("Mr. Sarkauskas") attended a meeting at a steakhouse in Indianapolis, Indiana with Liberty Tax founder, and then acting CEO, John Hewitt ("Mr. Hewitt") and Liberty Tax salesperson Mark Johnson ("Mr. Johnson"), who were attempting to persuade Mr. Sarkauskas to purchase additional territories.

19. During that meeting, Mr. Hewitt represented that the July 25, 2006 Agreement between Gorilla and Liberty Tax and the December 29, 2006 Agreement between Empire and Liberty Tax were "iron clad" and that Mr. Sarkauskas could renew them under the same terms.

20. Mr. Johnson also reiterated Mr. Hewitt's representations during that dinner.

21. In reliance on Mr. Hewitt's and Mr. Johnson's representations, Gorilla, Empire, and Enterprises entered into the post March 2007 Agreements identified above and acquired new territories under them, expending significant time, money, and effort in connection with those acquisitions.

22. At an Area Developer's retreat on April 26, 2018, Mr. Sarkauskas spoke with several Liberty Tax representatives regarding a substantially different new agreement that Liberty Tax had drafted as a renewal agreement for existing ADs ("Proposed Renewal Agreement").

23. During the same meeting, Liberty Tax representative and corporate officer Ryan Dodson informed Mr. Sarkauskas that Liberty Tax had manipulated the accounting to change how

ADs were compensated and that those changes would be addressed soon.

24. Liberty Tax CEO Representative Nicole Ossenfort informed Mr. Sarkauskas that they intended to release a revised agreement ("Revised Agreement") in place of the Proposed Renewal Agreement in July 2018 but would make arrangements to protect ADs like the Plaintiffs that were operating under expired agreements.

25. Ms. Ossenfort further informed Mr. Sarkauskas that the ADs, including the Plaintiffs, would have the option to choose between the Proposed Renewal Agreement or wait to renew with an agreement that would honor the terms of the original agreements including those between the Plaintiffs and Liberty Tax.

26. Liberty Tax representative Cory Hughes also informed Mr. Sarkauskas that he could hold off on signing the Proposed Renewal Agreement because each AD would have the option to choose either that Proposed Renewal Agreement or wait to renew with an agreement that would honor the terms of the original Agreements.

27. While waiting for Liberty Tax to present the promised Revised Agreement, Mr. Sarkauskas continually expressed Plaintiffs' intent to renew all their existing Agreements. See attached **Exhibit 8**.

28. While waiting for Liberty Tax to present the promised Revised Agreement, Plaintiffs continued to operate as before.

29. Liberty Tax finally reached out to Plaintiffs on August 14, 2019; however, instead of providing the promised Revised Agreements, Liberty Tax sent plaintiffs Letters of Non-Renewal (the "Termination Letters"), which abruptly ended all seven of the Agreements. See attached **Exhibit 9**.

30. The Termination Letters were sent without warning or any prior notice to cure any alleged breaches.

31. Following the Termination Letters, Liberty Tax stopped paying Plaintiffs any of the franchise fees and other monies owed to them under the Agreements.

**The Revised Agreement**

32. As discussed above, at some point Liberty Tax did in fact release the Revised Agreements to be entered into by all new ADs, which contained materially different terms than what was contained within the Agreements signed by the Plaintiffs (as well as other similarly situated ADs.)

33. While Liberty Tax representatives initially told Plaintiffs, and other existing ADs, that they would be permitted an option to renew their original Agreements, Liberty Tax changed course and began requiring all ADs to execute the Revised Agreements "as-is" in order to renew.

34. The original Agreements signed by the Plaintiffs contain the following provisions:

> If Area Developer wishes to renew ***this Agreement***, Area Developer must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement.

(§ 8.2 of Exhibits 1-7; emphasis added).

35. As of 2020, and upon information and belief 2021, Liberty Tax requires all renewing ADs to execute the Revised Agreement, and Liberty Tax no longer permits its ADs to renew their existing Area Developer agreements.

36. Some of the key changes in the Revised Agreement include:

a) Paragraph 3.3 of the Revised Agreement does not specify the percentage of fees or royalties payable to area developers and it should provide for the same 50% compensation as the 2007 Agreement. Specifically, the Revised Agreement removes the area developer's right to receive a 50% royalty payment for Liberty Tax owned stores. Additionally, the Revised Agreement would require area developers to provide support to Liberty Tax owned stores, even though they receive no payment of royalties from the Liberty Tax owned stores;

b) Paragraphs 3.15, and 3.16 were added in the Revised Agreement, which include the ability for Liberty Tax to deduct amounts owed to Liberty Tax from

7

payments to area developers, without any documentation or support, and the imposition of a $10,000 transfer fee for any transfer of the agreement;

c) Paragraph 4.1 was amended to eliminate compensation for undeveloped territories that Liberty Tax re-acquires from area developers and expands the population of territories subject to re-acquisition, imposes two performance goals and permits Liberty Tax to delete active, revenue-producing franchises if the franchisee doesn't meet the performance goals, and removes the language stating that deletion of territories was the "sole remedy" for failure to meet performance goals;

d) Paragraph 7.1 was amended to reduce the term of the agreement from ten years to six years; and

e) Paragraph 8.8(f) was added to impose liability on the area developers for any attorney's fees Liberty Tax incurred in enforcement of the agreement or its successful defense of such an action by the area developer.

37. As a consequence of these changes, among other things, the Plaintiffs would make less profit from its territories and the nature of the Area-Developer agreement would be materially altered.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

38. Plaintiffs repeat and reallege each and every allegation above as if fully stated herein.

39. To renew the Agreement, Plaintiffs each needed to "notify Liberty Tax in writing at least 180 days before the expiration of this Agreement."

40. Plaintiffs all gave timely notice of their intent to renew.

41. Although Liberty Tax should have renewed Plaintiffs' Agreements, Liberty breached those Agreements by failing to "provide" Plaintiffs "with the right to enter into a new Agreement" with Liberty.

42. Plaintiffs performed as required under their Agreements and were at no point in breach of any material obligation.

43. As a result of Liberty Tax's breaches of Plaintiffs' Agreements, each of the Plaintiffs

has lost valuable rights under their respective Agreements.

44. Those losses include the rights to the individual territories under the Agreements and the right to receive future revenues and profits.

45. As a direct and proximate result of Liberty Tax's breach, Plaintiffs each have been damaged in the amount of the territory commissions, sales and lost future royalties for the term of the renewed Agreements and any consequential damages due to wrongful termination.

WHEREFORE, in consideration of the foregoing, the Plaintiffs each respectfully requests the following relief:

1. An award of direct and consequential damages for breach of the respective Agreements in the amount of $3,000,000
2. An order awarding costs and expenses incurred as a result of filing this lawsuit; and
3. Such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

**GORILLA TAX SERVICES**

**SARKAUSKAS EMPIRE, INC., and**

**SARKAUSKAS ENTERPRISES, INC**

By:  /s/ Christopher D. Davis
         Of Counsel

Christopher D. Davis, Esq. (VSB No.: 74809)
Destinee B. Byers, Esq. (VSB No.: 94691)
Erin C. McDaniel, Esq. (VSB No.: 94884)
Davis Law, PLC
555 Belaire Ave., Suite 340
Chesapeake, Virginia 23320
Telephone: (757) 410-2293
Facsimile: (757) 257-8614
chris@davislawplc.com

<div style="margin-left: 40%;">

destinee@davislawplc.com
erin@davislawplc.com


CALIHAN LAW PLLC


/s/ Robert B. Calihan
Robert B. Calihan, Esq.
**CALIHAN LAW PLLC**
*Attorney for Plaintiff, Pro Hac Vice (pending)*
16 East Main Street
620 Reynolds Arcade Building
Rochester, New York 14614
Telephone: (585) 232-5291

*Attorneys for Plaintiff*

</div>

10